```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION


TEXAS DRAIN TECHNOLOGIES, INC.,   §
                                  §
      Plaintiff,                  §
                                  §
v.                                §
                                  §
CENTENNIAL CONTRACTORS            §      CIVIL ACTION NO. H-14-3298
ENTERPRISES, INC., and            §
TRAVELERS CASUALTY AND            §
SURETY COMPANY,                   §
                                  §
      Defendants.                 §
```

MEMORANDUM AND ORDER

Pending is Defendant Centennial Contractors Enterprises, Inc.'s Partial Motion to Dismiss Plaintiff Texas Drain Technologies, Inc.'s First Amended Complaint (Document No. 11). After carefully considering the motion, response, and the applicable law, the Court concludes as follows.

I. Background

Plaintiff Texas Drain Technologies, Inc. ("Texas Drain") entered into a subcontract with Defendant Centennial Contractors Enterprises, Inc. ("Centennial"), the general contractor on a project for Harris County Hospital District (the "Hospital District"), to remove and install piping in and around a grease

trap inceptor at Ben Taub Hospital.[1] During the course of Texas Drain's work on the project, it encountered "undisclosed and/or unknown conditions on the site," which had not been disclosed in the Contract Documents, and which required changes and additional costs in the scope of the work.  These included: (1) a sewer pipe in a different location causing the excavation to be much larger in scope and requiring alternative excavation and shoring methods; (2) an unknown drainage/waterproofing system which consisted of a granular column unsuitable for the planned excavation, which required more shoring, more containment, more labor, and an engineered-designed backfill procedure outside of the scope of the project described in the Contract Documents; (3) waterproofing that was originally excluded from the scope of work; (4) dewatering services that were originally excluded from the project; and (5) delays resulting from "acts/inactions and lack of coordination/ planning [that] caused [Texas Drain] great costs . . . ."[2] Texas Drain alleges that it promptly informed Centennial of these discoveries and of the new estimated costs, and Centennial ordered Texas Drain to complete the work.  Centennial, however, did not promptly inform the Hospital District, whose authorization for changes was required.[3]  For a number of months after the project

---

[1] Document No. 8 (Pl's Am. Cmpl.) ¶ 5.

[2] Id. ¶¶ 6, 6a-6e.

[3] Id. ¶¶ 7-8.

was completed, Centennial allegedly falsely represented to Texas Drain that the Hospital District would accept change orders after the work was completed and, in reliance on such misrepresentations, Texas Drain continued to compile, select, rearrange, and calculate its costs "to appease Centennial's shifting demands for the presentation of information regarding Change Order requests."[4] Ultimately, the Hospital District denied all of Texas Drain's invoices because Centennial had failed promptly and timely to give the Hospital District notice of the requested change orders and additional costs.[5]  In denying the invoices, the Hospital District "specified that Centennial knew the correct contractual procedure to follow. . . ." but "wholly failed to follow such procedure."[6] Texas Drain alleges that it has never been paid in full either for the original contract amount or for the additional work it was required to perform.[7]

Texas Drain brought this action against Centennial and its surety, Travelers Casualty and Surety Company ("Travelers"), in state court and, after the case was removed based on diversity of citizenship, Texas Drain amended its complaint to allege the following causes of action: (1) breach of contract, (2) suit on

---

[4] Id. ¶ 9.

[5] Id. ¶ 10.

[6] Id.

[7] Id.

sworn account, (3) an alternative quantum meruit claim, (4) an alternative promissory estoppel/unjust enrichment claim, (5) negligent misrepresentations, (6) fraud, and (7) negligence.[8] Texas Drain seeks damages for non-payment of the contract amount, including the change order request invoices, and actual damages incurred as a result of Centennial's negligent misrepresentations and fraudulent misrepresentations, including its costs for time, costs, and expenses associated with more than six months of responding to Centennial's changing requirements for presentation of change order requests.[9] Centennial moves to dismiss the claims for quantum meruit, negligent misrepresentation, fraud, and negligence, arguing that the subcontract governs the issues, and thus, these claims are precluded by Texas Drain's action in contract.[10]

## II. Legal Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v.

---

[8] Document No. 8 ¶¶ 11, 15, 20, 22, 24, 28, 30.

[9] Document No. 8 ¶ 35.

[10] Document No. 11 at 2.

<u>Rhodes</u>, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727 (1982).  The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.  *See* <u>Lowrey v. Tex. A&M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

III. <u>Discussion</u>

A.   <u>Quantum Meruit</u>

Centennial argues that the quantum meruit claim "clearly fits within the subject matter of the Subcontract."[11]  "Although a party 'generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished,' the party 'may, however, seek alternative relief under both contract and quasi-contract theories.'" <u>Sw. Bell Tel. Co. v. Fitch</u>, 643 F. Supp. 2d 902, 911 (S.D. Tex. 2009) (Atlas, J.); *see also* FED. R. CIV. P. 8(d)(2) (expressly allowing for pleading in the alternative).  Texas Drain's quantum meruit claim is pled in the alternative, and at present the issue is whether Plaintiff "is entitled to offer evidence to support the claims," *see* <u>Scheuer</u>, 94 S. Ct. at 1686, not whether Plaintiff may recover under both theories.  Accordingly, Centennial's motion to dismiss Texas Drain's alternative claim for quantum meruit is denied.

B.   <u>Tort Claims</u>

Texas Drain also alleges claims of negligent misrepresentation, fraud, and negligence against Centennial.[12]  Generally, to state a tort claim, the duty alleged cannot be derived solely from

---

[11] Document No. 11 at 9.

[12] Document No. 8 ¶¶ 24, 28, 30.

6

contract terms, and the damages must go beyond the expected benefit of the bargain. Chapman Custom Homes, Inc. v. Dall. Plumbing Co., 445 S.W.3d 716, 718 (Tex. 2014). This two-part inquiry is used to help determine if a claim sounds in tort or contract. Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 45 (Tex. 1998).

Texas Drain alleges that Centennial--motivated by its desire to preserve its ongoing business relationship with the Hospital District--for a period of months after completion of the project falsely represented and/or negligently misrepresented its ability to process Texas Drain's change orders with the Hospital District.[13] Centennial moves to dismiss this claim, arguing that its liability can only stem from the subcontract and not negligent misrepresentation.[14]

While claims for negligent misrepresentation usually are not available when a contract exists between the parties, this is not always the case. Texas has adopted section 552B of the Restatement (Second) of Torts which requires an independent injury for claims of negligent misrepresentation.[15] D.S.A., Inc. v. Hillsboro Indep.

---

[13] Id. at 12.

[14] Document No. 11 at 11-12.

[15] According to §552B:

(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the

7

Sch. Dist., 973 S.W.2d 662, 663-64 (Tex. 1998).  Texas Drain alleges that an injury--separate from its contract--arose after completion of the work when it relied upon Centennial's intentional or negligent misrepresentations and demands needlessly to prepare multiple re-submissions of change order requests that the Hospital District would not consider.[16]  Texas Drain in preparing such re-submissions incurred additional costs and losses caused by Centennial's misrepresentations.  At the pleading stage, the need for a separate injury is satisfied by plausibly alleging reliance damages or damages stemming from out-of-pocket expenses.  *See, e.g.*, TIB--The Indep. BankersBank v. Canyon Cmty. Bank, 13 F. Supp. 3d 661, 671 (N.D. Tex. 2014) (Fitzwater, C.J.) (court denied motion to dismiss negligent misrepresentation claim when out-of-pocket expenses, not benefit of the bargain damages, were alleged).  Texas

---

>
> plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including
>
>> (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
>>
>> (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
>
> (2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.  RESTATEMENT (SECOND) OF TORTS § 552B (1977).

[16] Document No. 8 ¶¶ 27, 28.4-28.5.

8

Drain's allegations are sufficient to state a plausible claim for damages caused by an injury separate from its contract damages.

In addition to a separate injury, negligent misrepresentation requires a duty independent of any contractual duty. D.S.A., Inc., 973 S.W.2d at 663. While a duty of care when supplying commercial information is normally limited to those in positions of trust, a duty always exists to correct false representations. Jetpay Merch. Servs., LLC v. Miller, No. CIV.A. 3:07CV0950-G, 2007 WL 2701636, at *5 (N.D. Tex. Sept. 17, 2007); see also Shell Oil Prods. Co. v. Main St. Ventures, L.L.C., 90 S.W.3d 375, 381 (Tex. App.—Dallas 2002 pet. dism'd by agr.) (claims for fraud and negligent misrepresentation were found independent of a contract when the statements concerned the level of commitment and ability to move forward with a project). While Texas Drain does not allege that Centennial held a position of trust, Texas Drain does allege that Centennial made statements to Texas Drain about the Hospital District's change order procedures that it knew were false, were not corrected, and were made repeatedly to the detriment of Texas Drain.[17] These allegations are sufficient to state a breach of a duty independent of the contract, and a plausible claim for negligent misrepresentation.

Centennial also argues that Texas Drain's fraud claim is "duplicative" of the contract claim, and thus, its liability can

---

[17] Id. ¶ 27.


only stem from the subcontract.[18]  Unlike other tort claims, a fraud claim can survive a motion to dismiss by showing a duty independent of the contract and without necessarily showing an independent injury.  *See* <u>Mandala v. Wells Fargo Bank, N.A.</u>, No. CIV.A. 4:12-2335, 2013 WL 1828022, at *3 (S.D. Tex. Apr. 30, 2013) (fraud claims may have losses that pertain to subject matter of contract). "The economic loss rule does not bar fraud and fraudulent inducement claims because the parties to a contract had an independent duty not to commit the intentional tort of fraud." <u>Barcenas v. Fed. Home Loan Mortgage Corp.</u>, No. CIV.A. H-12-2466, 2013 WL 286250, at *4 (S.D. Tex. Jan. 24, 2013) (Harmon, J.).

Texas Drain alleges that Centennial's Walter Won's material knowingly false statements and misrepresentations, upon which Texas Drain justifiably relied to its injury, are not covered by the subcontract.  Texas Drain's allegations state a plausible claim of fraud regarding matters not covered by the contract, and the motion to dismiss the fraud claim is denied.

The negligence claim, however, is different.  Texas Drain pleads Centennial "was negligent with regard to handling and/or mishandling [Texas Drain's] outstanding invoice amounts."[19]  Texas Drain alleges that Centennial failed "to act within the standard of care owed by a general contractor to subcontractor," resulting in

---

[18] Document No. 11 at 12-13.

[19] <u>Id.</u> ¶ 31.

Texas Drain's damages.  No damages are claimed here other than those damages caused by the alleged breach of contract.[20]  Centennial correctly argues that when a defendant's negligent conduct, "would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract."  Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991).  Accordingly, Centennial's motion to dismiss Texas Drain's negligence claim is granted.

### IV. Order

For the foregoing reasons, it is

ORDERED that Centennial Contractors Enterprises, Inc.'s Motion for Partial Dismissal (Document No. 11), is GRANTED IN PART, and Texas Drain Technologies, Inc.'s negligence claim against

---

[20] "[Centennial] failed to provide [the Hospital District] with the newly discovered conditions found within the Project at issue, and further failed to inform [Hospital District] of the estimated costs associated with the same, thereby extinguishing any possibility that [Texas Drain] would be compensated for its work. This failure and/or breach by Centennial caused [Texas Drain's] damages."  Id.

11

Centennial is DISMISSED.  Centennial's Motion for Partial Dismissal is otherwise DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 7th day of July, 2015.

---

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE